# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **JAMES GUSTAV KRIEDER** | **CIVIL ACTION NO. 5:14-cv-3361** |
| **VS.** | **SECTION P** |
| | **JUDGE ELIZABETH E. FOOTE** |
| **CADDO CORRECTIONAL CENTER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

<b>Consolidated With</b>

| | |
|---|---|
| **JAMES GUSTAV KRIEDER** | **CIVIL ACTION NO. 5:14-cv-3457** |
| **VS.** | **SECTION P** |
| | **JUDGE ELIZABETH E. FOOTE** |
| **CITY OF SHREVEPORT, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Pro se plaintiff James Gustav Krieder, is a detainee in the custody of the Caddo Parish Sheriff; he was booked into that facility on October 12, 2014, and awaits trial in the First Judicial District Court on a charge of aggravated battery; he is also being held on a probation violation warrant.[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaints be **DISMISSED WITH PREJUDICE** as frivolous or for failing to state a claim for which relief may be granted; and  **ALL PENDING MOTIONS** are hereby **DENIED.**

---

[1] See http://www.caddosheriff.org/inmates/?lastNameChar=K

*Statement of the Case*

*1. Civil Action No. 5:14-cv-3361*

Plaintiff is a detainee awaiting trial on a felony charge pending in the First Judicial District Court.  He has been in custody since October 12, 2014. He commenced this suit by submitting two letters to the Clerk of Court. The first letter, which was filed and construed as a deficient Section 1983 complaint, requested an injunction prohibiting CCC from housing 3 inmates to every cell until such time as the facility is inspected by an Independent Health Inspection company and a Prison Environmental Safety company. His only specific complaint with regard to conditions of confinement was that when three inmates are housed in a cell, "... the 3rd man out always sleeps by the toilet..."

In the second letter, filed the same date, he claimed to be bipolar, and suffering from Post-Traumatic Stress Disorder (PTSD); he questioned the authority and expertise of unnamed mental health professionals at CCC who apparently decide (in violation of Louisiana's Mental Health Law) which inmates should be housed in the prison's mental health ward. He claimed that on October 13, 2014, he was confined in an observation cell in the Mental Health Ward with two other inmates. He claims that they were stripped of their clothing and provided hospital gowns; he further complained that the size of the cell placed each inmate in close proximity to the toilet, and complained that he was abused, starved, and allowed out of the cell for recreation only 30 minutes every other day.  He claimed that he has been accused of malingering with regard to physical and mental health issues and that confidential medical information was discussed in public. He concluded by imploring a "Mental Health Advocate" to help him because his rights have been violated causing mental anguish and mental suffering.

2

Based upon a liberal reading of plaintiff's "letters" the Clerk of Court identified the following persons or entities as plaintiff's intended defendants – (1) the Shreveport Mayor's Office, (2) Shreveport Police Dept., (3) C.C.C., (4) Director Shelia Wright, (5) Kelly Hayes, (6) Lanelle Smith, and (7) "Charles" an EMT of 17 years. [Doc. 1]

Plaintiff was directed to use the Section 1983 complaint form provided for use to the prisoner's in this District [Doc. 3] and on December 23, 2014 he complied with that order and submitted a formal complaint.  Therein he provided the following Statement of Claim, "unsanitary living conditions, unsafe living conditions deliberate indifference see file...'" [Doc. 4, ¶IV] As noted above, he prayed for punitive damages to be paid to a Shreveport attorney "for future representation of indigent prisoners" in this Division and for the removal of stacker bunks from CCC and the revision of CCC's mental health treatment plan. He identified no defendants. [Doc. 4]

On January 29, 2015, he was directed to amend his complaint to provide, among other things, "(1)  the name of each person  who allegedly violated plaintiff's constitutional rights; (2)  a description of what actually occurred or what each defendant did to violate plaintiff's rights; (3)  the place and date that each event occurred; and (4)  a description of the alleged injury sustained as a result of the alleged violation." [Doc. 8]

On February 4, 2015, plaintiff filed a motion to consolidate Civil Action No. 5:14-cv-3361 and Civil Action No. 5:14-cv-3457, the latter being another civil rights complaint filed by plaintiff on December 16, 2014.  Plaintiff requested the consolidation "as [an] amendment to the civil rights case No. 5:14-cv-3361." [Doc. 9] Plaintiff's motion for consolidation was granted on February 10, 2015. [Docs. 10-11]

On March 17, 2015, plaintiff filed a Motion for Ruling asking the Court to rule "on the plaintiff's opposition to Summary Judgment which was originally entered under case no. 5:14-cv-3457." Plaintiff filed the motion "to see if it now satisfies the court's previous order to amend case no. 14-3361." [Doc. 12] On the same he filed a Motion for Ruling asking the Court to rule on his motions for preliminary injunction and temporary restraining order. In that motion plaintiff prayed that "the supporting documents are sufficient to prove that the Federal Bureau of Prisons does not approve of stacker bunks, Louisiana Department of Corrections does not approve of stacker bunks, in fact [CCC] has lost its DOC certification because of it and in fact Louisiana Fire Marshals Office has no jurisdiction over State or Federal prisons when it comes to sanitary living conditions." [Doc. 13] On the same date plaintiff filed a "Motion for Order" asking the Court to "review the plaintiff's request for documents and memorandum to support request for documents that were originally entered under case no. 5:14-cv-3457 before it was consolidated with case no. 5:14-cv-3361." [Doc. 14] On the same date plaintiff requested and was provided a copy of the docket sheet. [Doc. 15]

### 2. Civil Action No. 5:14-cv-3457

While the prior civil action was pending, plaintiff filed a new complaint on December 16, 2014.  Plaintiff named the following defendants – the City of Shreveport, Mayor Cedric Glover, Chief of Police Willie Shaw, CCC, Sheila Wright, Kelly Hayes, Dy. Griffin, Charles Ball, and Lanelle Smith.  He complained that the defendants City of Shreveport, Mayor Glover and Chief Shaw were at fault because they allowed un-convicted Shreveport prisoners to be housed with convicts in the custody of the DOC. As to the remaining defendants, he faulted them for their treatment of mentally ill inmates; for their refusal to allow such inmates to freely practice their

4

religion; for failing to provide such inmates their proper medication. He claimed that these

defendants also violated the Universal Declaration of Human Rights, the Americans with

Disability Act, Mental Health Advocacy, and, the Eighth Amendment, with regard to the

treatment and housing of mentally ill inmates.  He also claimed that defendant Bell violated

plaintiff's "rights to have my medical files remain private under HIPA (sic) by stating my

medical evaluations and Doctor's councils (sic) in front of 31 cells in Mental Health with at least

two people in each cell..." He accused the defendant of "refusing to provide ... adequate medical

care" on the grounds that plaintiff's was a malingerer.  Plaintiff prayed for an injunction "to stop

the use of stacker bunks in two man cells to house 3 men in which it puts the third man living in

unsanitary conditions at all times." He also prayed for $250,000 in compensatory damages from

each defendant and $50,000 in punitive damages from each defendant. [Doc. 1]

On the same date plaintiff filed a Motion to Appoint Counsel. [Doc. 3] On December 23,

2014 plaintiff filed a Motion for Leave to File an Amended Complaint seeking to add as

defendants, Caddo Parish Sheriff Steve Prator and Commander Robert Wyche, and seeking $5

million from each. [Doc. 4]

On December 23, 2014 he filed a "Memorandum in Opposition to Summary Judgment"

and exhibits. [Doc. 5] In the Memorandum plaintiff complained about the denial of appropriate

medical care for mental health and dental issues; he also complained about the co-pay

requirement at CCC. In support of his claims he attached exhibits as follows:

1. Inmate Kite Communication G 14120057 and Grievance dated December 3, 2014

complaining that Sheila Wright and Kelly Hayes of the Medical Department "stop and start diet

trays" and providing plaintiff an unnecessary  "special diet"; and, expensive co-pays for

5

treatment and medication. Plaintiff requested the cessation of the special diet or that he be sent to a cardiologist to have it stopped; he also requested that he not be charged for medical expenses and that all his medical bills be forwarded to the Shreveport City Council since he was a Shreveport City prisoner. [Doc. 5-1, pp. 1-2, Exhibit A-1]

2. First Step Response Form to Grievance No. G 14120057 dated December 8, 2014 from Nurse Kelli Hayes who advised plaintiff, "As it was explained to you in a kite response on 11/14/14 only the doctor can discontinue your cardiac diet. If for some reason you have received something other than a cardiac diet it is not because myself or Director Wright has taken it upon ourselves to change it. This diet was ordered by the physician upon your discharge from the hospital on 10/16/14 when you were seen for chest pain. Since that time medical has made no changes to your diet. As far as your charges are concerned, I have reviewed your chart and am unable to find where you have been overcharged. The reason some pills are taken from the 'community bottle' (stock bottle) is to facilitate your receiving medications expeditiously until the medicine is received from the pharmacy. The dentist routinely only orders a certain number of pills and once the limit has been reached you no longer receive the medicine. Each prescription costs $5.00." [Doc. 5-1, p. 3, Exhibit A-2]

3. Offender's Relief Request Form for ARP Number G 14120057 dated December 9, 2014, wherein plaintiff appealed the denial of his grievance to Ms. Wright, the medical director. In this appeal plaintiff complained that he was charged for 3 separate prescriptions; that he is still being served unnecessarily a special diet; and that Paramedic Charles Ball accused plaintiff of being crazy and a malingerer in front of Lanelle Smith.  He also claimed that the City of Shreveport was responsible for all medical bills until plaintiff is either convicted or set free.

[Doc. 5-1, pp. 4-5, Exhibits A-3 and A-4]

4. Second Step Response Form for ARP No. G 14120057 dated December 17, 2014, from Commander Wyche. Plaintiff's appeal was denied and he was advised, (1) plaintiff was not overcharged; (2) the physician is responsible for changing plaintiff's diet; (3) all medical expenses are paid by the taxpayers of Caddo Parish, not insurance. The form concluded, "Your remedy to be sent to a cardiologist at University Health to stop your diet is denied." [Doc. 5-1, p. 6, Exhibit A-5]

5. A series of Charge Sheets and receipts dating from 11/25/2014 to 12/15/2014. [Doc. 5-1, pp. 7-13, Exhibits A-6 to A-9]

6. An Administrative Remedy Request dated December 10, 2014 and assigned ARP #G 14120121 in which plaintiff complained that the medical staff dispense medication by hand and not in paper cups thus causing an emergency health hazard. Plaintiff claimed that his lips became swollen immediately after having taken pills in this manner. He requested dispensation of medicine in paper cups. [Doc. 5-1, p. 14; Exhibit B-1]

7. First Step Response to Grievance G 14120121 dated December 15, 2014. The response acknowledges the grievance and grants plaintiff's desire that all medications be provided in individual medication cups. [Doc. 5-1, pp. 15-16, Exhibit B-2 and 3]

8. Kite Communication from plaintiff dated November 2014 requesting oragel and advil for a broken tooth and plaintiff's removal "from this stupid cardiac diet"; and the response of Ms. Hayes  advising plaintiff to fill out a sick call to be evaluated in order to obtain pain medication. The response also noted, "University Health placed you on a cardiac diet when you were sent out for chest pain. Due to your blood pressure and the doctor's order, I am unable to change your

diet.  [Doc. 5-1, pp. 17-18, Exhibit C-1]

9. Kite communication from plaintiff dated November 21, 2014, complaining of a broken tooth and requesting an extraction and the reply advising plaintiff you fill out a sick call request and see the nursing staff to obtain a dental referral. [Doc. 5-1, pp. 19-20, Exhibit C-2]

10. Kite communication dated November 19, 2014, requesting the name of the person in charge of dental services.  The response advised that dental services are coordinated through the medical department. [Doc. 5-1, pp. 21-22, Exhibit C-3]

11. Kite communication from plaintiff dated December 15, 2014, complaining about the cancellation of a dental appointment to have teeth extracted and complaining about being charged three times for Advil that he had to take to ease pain. The response indicated that the dental equipment was broken for 3 weeks and that plaintiff could be seen as soon as possible. [Doc. 5-1, pp. 23-24, Exhibit C-4]

12. Administrative Remedy Request No. G 141120174 and dated December 16, 2014, in which plaintiff complained that since December 15, 2014, the date his teeth were pulled, he can no longer eat "tough foods" like apples. He requested a diet adjustment. The response advised, "substitute apples with soft fruit or snack cakes pending ... being scheduled for bridge fitting in the dental department. [Doc. 5-1, p. 25, Exhibit D-1]

13. An Offender's Relief Request Form assigned ARP Number G 141120174 rejecting the response to plaintiff's previous grievance with the following, "I talked with medical on your behalf. You will not be given a substitute for apples because our current dental sates allows for apple consumption." [Doc. 5-1, p. 26, Exhibit D-2]

14. Kite Communication dated December 5, 2014, claiming that his personal tennis shoes

were approved for medical purposes by Dr. Nelson. He further claimed that the medical department misplaced the order. He concluded by requesting that he be allowed to wear his shoes or be permitted "thick sole trustee shoes." The response indicated that personal shoes are not allowed; orthopedic shoes are allowed with a physician's order which would permit plaintiff to purchase orthopedic shoes and no others. [Doc. 5-1, Exhibit E, pp. 27-28]

On January 5, 2015, plaintiff's motion for appointed counsel was denied. [Doc. 8] Plaintiff's motion to amend was granted. [Doc. 9] The amended complaint was added to the docket sheet. [Doc. 10]

Plaintiff also filed a Memorandum Declaration wherein he alleged that he had been incarcerated at CCC since October 12, 2014; for the first 4 weeks of detention he was held in the mental health unit without cause for 29 days during which "one of my front incisors was broken out of my mouth by Caddo's ERT." Thereafter, plaintiff claimed to be in constant fear that the ERT would return, call plaintiff crazy and start hitting him again causing PTSD and sleepless nights.  Plaintiff also complained that the facility lacked a grievance process and refused to address his grievances about his teeth, about a deputy causing unjust punishment, about Sgt. Roraback "the ARP man" not being educated, about deputies stealing inmate food and destroying plaintiff's legal work.

In another Declaration he alleged fault on the part of the City of Shreveport, the Mayor's office, and the police department for failing to monitor the conditions of confinement for city prisoners housed at CCC.  He also declared that CCC mental health discriminates against mental health patients by violating the Religious Land Use and Institutionalized Persons Act (RLUIPA) which protects the rights of prisoners to practice their religion.

9

In another Declaration he alleged that CCC censors his mail and monitors his telephone calls in violation of the Fifth Amendment.

In another Declaration he claimed of "being exposed to serious harm, well being told it is my constitutional right to contract Hepatitis C by living in a Stacker Bunk on the floor of a two man cell below the fecal and urine receptical  ..."  He complained that the stacker bunk blocks a third of the cell door and the guards allow handicapped prisoners to pass over the bunks with wheel chairs and walkers. [Doc. 11]

He also Declared that the totality of conditions are unsanitary and overcrowded. In support of these Declarations plaintiff submitted the following exhibits:

1. Administrative Remedy Grievance No. G 14120213 dated December 23, 2014 in which he claimed that corrections officers were stealing inmates' food. Therein he noted, "I will not allege that Deputy Mixon is guilty of these law violation himself. The preponderance of the evidence can mostly be found on time stamped video from security video between 11 a.m. and 12 p.m. everyday." He asked for the suspension of deputies for theft and for extra use of the law library to replace law work. In a supplement to the grievance he alleged again the theft of inmate food and the destruction of plaintiff's legal documents. [Doc. 11-1, pp. 1-5, Exhibit AA-01-04]

2. Offender's Relief Request Form G 14120213 dated December 24, 2014 rejecting the grievance because plaintiff has an ARP in the system. [Doc. 11-1, p. 6, Exhibit AA-05]

3. Administrative Remedy Request No. G 14120200 dated December 20, 2014 complaining about Dy. Young's "non stop ridicule and constant threat of loss of recreational time" and placement in lock down. He asked for her transfer to another tier. The response to the grievance, dated December 22, 2014, stated, "Deputy Young has never locked you down.

Pointing out that you could be locked down for a violation is not a violation of policy." [Doc. 11-1, pp. 7-8, Exhibits BB-01 and BB-02]

4. Administrative Remedy Request dated December 23, 2014, complaining about Sgt. Roraback's interpretation of the previous grievance and requesting "more than one man's opinion on every A.R.P..." [Doc. 11-1, p. 9, Exhibit CC-01]

5. Administrative Remedy Request G 14120175 dated December 15, 2014, in which plaintiff complained, "refusal by Deputy Pitts ... to help provide me with information that is easily obtained by computer just because I have a motion for a TRO in effect for the removal of stacker bunks at CCC ... and a separate 1983 filed for monetary damages against CCC's medical department..." He request access to the law library for 5 days/week. [Doc. 11-1, p. 10, Exhibit DD-01]

6. Offender's Relief Request Form for ARP G 14120175 inquiring, "What information is Deputy Pitts refusing to give you?" [Doc. 11-1, p. 11, Exhibit DD-02]

7. Kite Communication from plaintiff assigned ARP No. G 14120056, dated December 3, 2014 which complains about the lack of ARP Grievance forms. [Doc. 11-1, pp. 12-13, Exhibit EE-01]

8. Offender's Relief Request Form for ARP Number G 14120056. The response to plaintiff was that a sufficient amount of forms are delivered every Monday and, if they run out, inmates may use a Kite form or any paper properly labeled "This is a request for Administrative Remedy..." Plaintiff rejected the response and alleged that he witnessed deputies place the forms under their desk and then advise inmates that there were no forms. [Doc. 11-1, p. 14, Exhibit EE-02]

9. Administrative Remedy Request dated December 16, 2014 complaining that since his incisors were extracted he wanted soft fruit instead of apples. [Doc. 11-1, p. 15, Exhibit FF-01]

On January 5, 2015, plaintiff filed a "Memorandum Exhaustion of Administrative Remedy Procedures" arguing that the merits of his Section 1983 litigation should be decided *de novo* and should not be seen as the appellate review of the jail's grievance procedures. [Doc. 12]

On the same date plaintiff filed an "Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order" seeking to enjoin the use of stacker bunks at CCC. [Doc. 13]

On January 6, 2015, plaintiff filed a Request for Production of Documents. [Doc. 14]

On January 9, 2015, plaintiff filed an appeal of the undersigned's order denying appointment of counsel. [Doc. 15] On January 13, 2015, Judge Hicks denied the appeal. [Doc. 16]

On January 14, 2015, plaintiff wrote a letter to the Clerk of Court complaining about his belief that CCC was delaying plaintiff's mail to and from the Court. [Doc. 17] On January 30, 2015, plaintiff filed a Notice of his intent to take out full page ads in the Morning Advocate and Shreveport Times on February 20, 2015. These ads, according to plaintiff, will notify the general public of his intention to file a motion for a TRO to shut down the CCC due to malfunctioning locking systems on all cell doors.  Plaintiff intends to provide a diagram of the locking mechanism with instructions on how to manipulate the lock. [Doc. 18]

On February 3, 2015, plaintiff requested a form for filing his motion for TRO. He was provided copies of the Court's Section 1983 forms and was advised that the Clerk has no forms for filing motions for TRO. [Doc. 19] On February 10, 2015, the cases were consolidated as requested by plaintiff. [Doc. 20] On March 17, 2015, plaintiff requested a copy of the docket

sheet and it was provided as requested. [Doc. 21]

### Law and Analysis

### 1. Screening

Plaintiff was a detainee when he experienced the conditions complained of.

Nevertheless, a detainee is considered a prisoner pursuant to 28 U.S.C. §1915(h). When a

prisoner or detainee is allowed to proceed *in forma pauperis* in a suit against an officer or

employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate

the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant who is

immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440

(5th Cir.1990).    A civil rights complaint fails to state a claim upon which relief can be granted if

it appears that no relief could be granted under any set of facts that could be proven consistent

with the allegations of the complaint. Of course, in making this determination, the court must

assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022,

1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given

broad discretion in determining when such complaints are frivolous. *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Ashcroft v. Iqbal,* 596 U.S. 662,  129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As shown above, plaintiff has filed a several complaints, memoranda, motions, and declarations along with supporting exhibits including prisoner grievances and responses. Further amendment would serve no useful purpose.

## 2. Conditions of Confinement

Plaintiff complains of various conditions of confinement in the Mental Health Unit at CCC where he was incarcerated for a period of 29 days beginning October 12, 2014.  In both civil actions he complained about the prison's practice of using "stacker beds" to house 3 inmates in a cell designed for 2.  His specific complaint throughout concerned the alleged unsanitary conditions experienced by one of the three inmates thus confined, who by virtue of the design of the cell, was required to sleep in close proximity to the cell's toilet.  In later pleadings plaintiff alleged that the confinement of prisoners to these mental health cells violated the

Americans with Disability Act, the Universal Declaration of Human Rights, Mental Health

Advocacy, the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Eighth

Amendment, although he failed in each instance to allege specifically how such confinement

violated these treaties, laws, statutes and provisions.

 During the period in question, he was a pre-trial detainee and not a convicted inmate.  It

has long been held that "... [t]he State's exercise of its power to hold detainees and prisoners ...

brings with it a responsibility under the U.S. Constitution to tend to the essentials of their

well-being: when the State by the affirmative exercise of its power so restrains an individual's

liberty that it renders him unable to care for himself, and at the same time fails to provide for his

basic human needs ... it transgresses the substantive limits on state action set by the Eighth

Amendment and the Due Process Clause."  *Hare v. City of Corinth, Miss*., 74 F.3d 633, 638-39

(5th Cir.1996) (en banc) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs*., 489 U.S.

189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

 Thus, a detainee's constitutional rights arise from "both the procedural and substantive

due process guarantees of the Fourteenth Amendment." *Hare,* at 639 (citing *Bell v. Wolfish*, 441

U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The Due Process Clause of the Fourteenth

prohibits the punitive confinement of a pretrial detainee since, by definition, the guilt of a

detainee has not yet been adjudicated. *See Bell*, 441 U.S. at 535. Since plaintiff is a pretrial

detainee, the issue herein is whether or not the complained of acts or omissions of the defendants

amounted to a violation of plaintiff's due process rights under the Fourteenth Amendment.

 Under Fifth Circuit jurisprudence, in order to determine the standard of analysis for

constitutional challenges brought by pretrial detainees under § 1983, courts are directed to first

classify the challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir.1997) (citing *Hare*, 74 F.3d at 644).   In a detainee suit challenging conditions of confinement, the constitutional challenge is to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.  On the other hand,  an "episodic act or omission" case complains of a particular act or omission of one or more officials, and it focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645. A detainee who complains that an "episodic act or omission" resulted in an unconstitutional violation of a his Fourteenth Amendment rights is required to show that the officials acted with "deliberate indifference" to his health and safety. *Hare*, 74 F.3d at 647-48.

Plaintiff commenced this civil action by attacking the general conditions, practices, rules, or restrictions of his pretrial confinement in the CCC's mental health department.  He complained of overcrowding, the use of stacker bunks, and the unsanitary conditions allegedly experienced by one of the three inmates thus confined. Therefore, the Court must apply the test announced by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See *Hare*, 74 F.3d at 644.  Under this test, the Court must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538. The test requires a court to determine whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (citing cases).

In order to determine whether the condition is a punishment, and therefore unconstitutional, the court must determine  whether the "particular condition or restriction of

16

pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. If it is,

the condition or restriction does not amount to unconstitutional "punishment." *Id.* "Conversely, if

a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or

purposeless – a court permissibly may infer that the purpose of the governmental action is

punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* As is

shown more fully below, none of plaintiff's conditions of confinement claims have been shown

to be arbitrary or purposeless or unrelated to legitimate goals.  At worst, plaintiff was exposed to

a various inconveniences and not punishment during his 29 day confinement in CCC's mental

health cell.

   For example, plaintiff complained of over crowding, that is to say, of CCC's practice of

housing three inmates in a two-man cell. Of course, overcrowded conditions can, in some

instances, be violative of the Constitution. *Bell*, 441 U.S. at 542, 99 S.Ct. at 1875. In order to

determine whether "overcrowding" amounts to a constitutional violation, the court must examine

"... the length of time an individual detainee must spend in a confined area both ultimately and

on a daily basis, and the adequacy of the given sleeping space." See *id.* at 543, 99 S.Ct. at 1876.

Here, plaintiff does not allege overcrowding sufficient to establish a Constitutional claim.

Plaintiff was exposed to the complained of conditions for relatively short periods of time and, he

alleged no particular harm arising from those conditions.  Indeed, plaintiff's pleadings do not

even establish that he was the third inmate exposed to the allegedly deleterious conditions.

   Rather than punitive, the conditions about which plaintiff complained appear to rise to no

more than "a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*,

441 U.S. at 539 n. 21; see also *Hamilton v. Lyons*, 74 F.3d 99, 106-07 (5th Cir.1996)(affirming

dismissal of conditions of confinement claim as frivolous); *Callicutt v. Panola County Jail*, 200 F.3d 816 (5th Cir. 1999).

Plaintiff complained about the paper gowns provided to him and his companions upon their entry into the mental health cell. Jail officials must provide "humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, ... medical care," and hygiene. *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir.1999).  Once again, plaintiff has not demonstrated that the complained of circumstances were the result of a punitive policy;  his argument raises no more than a *de minimis*  imposition and therefore is frivolous.  *Bell*, 441 U.S. at 539 n. 21.

### 3. Medical Care

Plaintiff also complains about the denial of appropriate or adequate medical care.  More specifically, he faulted the defendants for their failure to adequately address mental health and dental problems. Initially, he claimed that the jail personnel were not trained to assess and diagnose mental health issues and therefore they were not competent to assign detainees to the mental health unit.  Additionally, he faulted the defendants for failing to substitute soft fruit for the apples that had been provided with his meals after his incisors had been extracted. He complained that he had been erroneously ordered to receive a cardiac diet. Finally, he complained about the co-pay requirements for medical care and medication.

As noted above, plaintiff's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). Detainees, by virtue of their status, are not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). Nonetheless, when, as here, a pretrial

detainee brings  medical care claims which are directed toward  particular incidents, these events are properly analyzed as episodic acts, and the deliberate indifference standard is applied. *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Id.*  To state a cause of action, this plaintiff needs to show deliberate indifference on the part of each of the defendants. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm.  Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm*. Id.*

Thus, in order to establish an actionable constitutional violation  plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety.  *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the plaintiff to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings.

To the extent that the pleadings allege negligence or even malpractice on the part of the defendants with regard to his medical care claim, plaintiff fails to state a claim for which relief may be granted since deliberate indifference is not equivalent to negligence. Put simply,

deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it.  In other words, a civil rights  plaintiff must allege and prove that each of the  defendants knew of and then disregarded an excessive risk of injury to him, and,  that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837.   Here, plaintiff has alleged no injury resulting from his medical care claims.

### *4. Censorship*

Plaintiff claims that his mail and telephone conversations are censored; he also claims that the defendants are delaying plaintiff's mail to and from this Court. Again, plaintiff offered only conclusory allegations that his mail and telephone conversations are being monitored or censored. He offered nothing but his unfounded belief that mail and telephone conversations have been censored and monitored. As noted above, plaintiff has filed numerous filings with the Court. Since filing his complaints, plaintiff has been provided copies of the docket sheets; nevertheless, he has not complained that any of his letters to the Court or other pleadings have been intercepted or delayed.

### *Orders and Recommendation*

Based on the foregoing, all pending Motions in Civil Action No. 5:14-cv-3361, i.e., plaintiff's Motion for Ruling [Doc. 12], Motion for Ruling [Doc. 13] and Motion for Order [Doc. 14] are **DENIED**; and, all pending Motions in Civil Action No. 5:14-cv-3457, i.e., Motion for

Preliminary Injunction and/or Temporary Restraining Order [Doc. 13] are likewise **DENIED.**

Further,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Monroe, Louisiana, April 23, 2015.


**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**